UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOE L. FLETCHER, *Pro Se*,[1] | ) | Case Nos.: 5:25 CV 1308 [2] (5:20 CR 482) |
| | ) | 5:25 CV 2207 |
| Petitioner | ) | 5:25 CV 1309  (5:21 CR 707) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| Respondent | ) | |
| | ) | ORDER |

Currently pending in the above-captioned case is Petitioner Joe L. Fletcher's ("Fletcher" or "Petitioner") Motion to Vacate ("Motion"), pursuant to 28 U.S.C. § 2255. Fletcher has two identical pending Motions, (Case No. 20CR482, ECF No. 221); (Case No. 21CR707, ECF No. 55), having filed one on the dockets in each of his criminal cases. Given their identical nature, this Order resolves the pending Motions in both of the above-captioned cases. For the following reasons, the court denies the Motion to Vacate. (20CR482, ECF No. 221; 21CR707, ECF No. 55)

## I. BACKGROUND

### A.    Fletcher's Underlying Criminal Convictions

---

[1]    Fletcher initiated Section 2255 proceedings without counsel, filing *pro se*. However, this court referred his request for appointment of counsel, (ECF No. 220), to the Federal Public Defender's Office. (*See* 06/05/2025 Dkt. Entry.) The Federal Public Defender filed the most recent Supplement, (ECF No. 231), in case 5:20 CR 482 / 5:25 CV 1308 (*see* n.2).

[2]    Fletcher's criminal cases are listed alongside their associated civil case numbers, which are automatically assigned upon the filing of a § 2255 petition. However, the civil case dockets direct all subsequent entries to the criminal cases/dockets.

On June 24, 2020, Fletcher was under surveillance by law enforcement officers in the Ohio Northeast Smuggling Enforcement Task Force ("Task Force") and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). (Opp'n at PageID 2716.) The surveillance was based on an "investigation prior" to that date, which made officers "aware that Defendant, a convicted felon, was frequently in possession of firearms." (*Id.*) Multiple surveilling officers observed Fletcher leave a hotel room and enter a tan Chevrolet Malibu (the "vehicle"). (*Id.*; *see also, e.g.*, ECF No. 210, Tr. at PageID 1636–38.) Once the vehicle began driving away, Task Force officers followed, and sought assistance from the Ohio State Highway Patrol ("Highway Patrol"). (FPD Suppl. at PageID 2695.)

Shortly thereafter, a high-speed chase ensued when Highway Patrol Trooper Darrell Dowler attempted a traffic stop on the basis of a window tint violation; but, rather than coming to a stop, the vehicle accelerated. (*Id.* at PageID 2696; Opp'n at PageID 2716.) After three and a half minutes or so, the Highway Patrol abandoned its on-the-ground pursuit, and instead employed an aircraft to track the vehicle and guide Officers Jared Hasler ("Officer Hasler") and Adam Anderson ("Trooper Anderson") to its location. (Opp'n at PageID 2716; FPD Suppl. At PageID 2969.) When the vehicle eventually reached a dead end in a residential area, Trooper Anderson saw five occupants exit and flee from the vehicle. (FPD Suppl. at PageID 2696; Tr. at PageID 1682, 1725.) He approached the vehicle and saw a firearm in the rear seat on the drivers' side, which he then removed and placed in his police cruiser. (FPD Suppl. at PageID 2696; Opp'n at PageID 2717.)

Multiple officers established a perimeter around the area, on foot and by aircraft. While fleeing, and before being found by officers, Fletcher went on Facebook live, broadcasting real-time video footage of himself as he attempted to evade law enforcement. (Opp'n at PageID 2717.) Officers eventually found and apprehended three of the vehicle's occupants: Petitioner Fletcher,

Leandre Hollinshed ("Hollinshed"), and Savannah Brice ("Brice"). (FPD Suppl. at PageID 2696; Opp'n at PageID 2717.) Hollinshed and Fletcher were found near one another, in a wooded area. (FPD Suppl. at PageID 2696; Opp'n at PageID 2716–17.) The other vehicle occupants were not apprehended at that time, but were later identified as Gavin Williams, and Fletcher's son, Imere Green. (FPD Suppl. at PageID 2695; Opp'n at PageID 2717.)

While released on bond, Fletcher posted another video, wherein he stated "it could have been 'a lot worse.'" (FPD Suppl. at PageID 2969.) Observing this video led officers to search the crime perimeter again the next day. (*Id.*) That search turned up 39.4 grams of crack cocaine, found under a tree in the wooded area near where Fletcher was apprehended. (*Id.*; Opp'n at PageID 2717.)

On September 3, 2020, Fletcher was charged in the Northern District of Ohio for drug and firearm possession offenses. (ECF No. 1, Indictment.) Two days later, on September 5, 2020, Fletcher posted a video of himself in his car, looking at police officers from afar, and stating: "[s]omebody needs to pull through and shoot these honkies" and "I should up the Glock on you punk bitches right now, you bitch." (Opp'n at PageID 2718–19.) He then revealed a "Glock pistol with a thirty-round extended magazine near the center console" in the vehicle with him. (*Id.*)

On September 8, 2020, when officers attempted to execute a warrant for his arrest, Fletcher again fled in his vehicle from officers. (*Id.* at PageID 2718.) He was stopped by a roadblock, and then taken into custody. (*Id.*) That evening, Fletcher used the Summit County Jail's phone to call his girlfriend, and told her that "he had left 'the thirty up there,' and suggested that she could retrace his flight path to retrieve it." (*Id.*) Based on the contents, both of that phone conversation plus Fletcher's aforementioned video referencing and showing a "Glock," ATF officers decided to retrace the previous day's vehicle pursuit path. Their search turned up a "loaded  Glock 17 pistol with a thirty-

round extended magazine," on a residential lawn where Fletcher had lost control of his vehicle and hit a tree during the pursuit. (*Id.* at PageID 2719.) It appeared to be the same firearm that officers saw in Fletcher's video, and testing later confirmed that "the DNA profile of the grip, slide, and buttons of the gun matched Defendant's DNA." (*Id.*) Accordingly, this incident resulted in Fletcher receiving an additional charge for possession of a firearm. (*Id.*)

1)   Case No. 5:20 CR 482 Convictions

On September 24, 2020, a federal grand jury in the Northern District of Ohio indicted Fletcher in a Superseding Indictment, (ECF No. 13), on the following counts: Felon in Possession of a Firearm, under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I); Possession with Intent to Distribute a Controlled Substance, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II); Possession of a Firearm in Furtherance of a Drug Trafficking Offense, under 18 U.S.C. § 924(c)(1)(A)(I) (Count III); and an additional Felon in Possession of a Firearm charge, for his offense on September 8, 2020 (Count IV). (*Id.*) Count Four was later severed by the court for trial by a separate jury. (*Id.*)

On April 15, 2022, a jury found Fletcher guilty on Counts One, Two, and Three. (ECF No. 74, Counts I–III Verdict.) On August 23, 2023, a separate jury in the severed trial also found Fletcher guilty on Count Four. (ECF No. 148, Count IV Verdict.) Fletcher was sentenced to 108 months of imprisonment on Counts One, Two, and Four, to be served concurrently, and 60 months on Count Three, to be served consecutively.

2)   Case No. 5:21 CR 707 Conviction

After his Indictment in Case No. 5:20 CR 482, Fletcher was ordered detained pending trial. (ECF No. 10, Magistrate Detention Order; 09/29/2020 Dkt. Entry, Arraignment Minutes.) However, the court granted Fletcher a furlough on August 16, 2021, to attend his daughter's funeral two days

later. (ECF No. 32, Order.) He was ordered to be released on the morning of August 18, 2021, to visit only the funeral and repass locations, and then to return to the Northeast Ohio Correctional Center before 7:00 p.m. (*Id.*) Fletcher did not abide by his furlough conditions. Instead, he fled from his mother's home, and did not return to detainment as ordered. Upon his failure to return to the facility, the court issued a warrant for Fletcher's arrest. (ECF No. 35.) Two days later, on August 20, 2021, Fletcher was found hiding in the basement of an Akron residence, and was arrested and brought to Summit County Jail. (Opp'n at PageID2720.)

Consequently, on September 30, 2021, Fletcher was indicted in a separate criminal case, Case No. 5:21 CR 707, for one count of Escape in violation of 18 U.S.C. § 751(a) (Count I). (ECF No. 37, Notice of Related Case; 5:21CR707 Doc # 1.) On August 23, 2023, the jury returned a guilty verdict against Fletcher, and he was sentenced to 60 months of imprisonment, to be served concurrently with his sentence in related Case No. 5:20 CR 482. (5:21CR707 Doc # 22, 28.) Thus, on his five total convictions, Fletcher received 168 months' imprisonment in the custody of the Bureau of Prisons. (ECF No. 164, Judgment at PageID 1252–53.)

**B.      Fletcher's Attorneys Throughout Proceedings**

Fletcher's Motion for § 2255 relief from his convictions in Case No. 5:20 CR 482 advances numerous claims of Ineffective Assistance of Counsel ("IAC"). Throughout his case, Fletcher was represented by three attorneys, all of whom ultimately withdrew from representation.

<u>1)      Attorney Erik Jones for Pretrial Proceedings</u>

During the arraignment and pretrial phase of trial, Fletcher was represented by appointed counsel Erik E. Jones ("Attorney Jones") (09/09/2020 Dkt. Entries, Hearing Minutes & CJA 20 Appointment of Attorney.) On October 27, 2020, Attorney Jones filed a Motion to Suppress. (ECF

No. 16.) During one pretrial proceeding, he concurred in the Government's representation that it had provided most of discovery, and made an oral motion to continue the matter, pending the outcome of Fletcher's Motion to Suppress. (11/04/2020 Dkt. Entry, Conference Minutes.) However, after some further motion practice concerning suppression, but before the Motion to Suppress was decided, Attorney Jones filed a Motion to Withdraw As Counsel. (ECF No. 23.) Attorney Jones explained the basis for withdrawing representation was that Fletcher "communicated to counsel that he wishes the instant representation to be terminated," due to "difference of opinion as to the filing of motions." (*Id.* at PageID 107.) After a hearing on the matter, the court granted Attorney Jones' Motion to Withdraw, with new counsel to be appointed. (02/23/2021 Dkt. Entry, Hearing Minutes.)

2)        Attorney Fernando Mack for Trial on Counts One, Two, Three

Accordingly, the court appointed Fernando O. Mack ("Attorney Mack") to represent Fletcher. (02/23/2021 Dkt. Entry, CJA 20 Appointment of Attorney.) The IAC claims raised in the instant Motion primarily concern Attorney Mack's representation of Fletcher during his trial on Counts I–III.

During the course of his representation, Attorney Mack reviewed discovery, attended pretrial conferences, and filed Motions on Fletcher's behalf. (*See, e.g.*, 10/7/2021 Dkt. Entry, Conference Minutes; ECF Nos. 27–29, 31.) His motion practice included the filing of the successful Motion for Relief from Prejudicial Joinder, (ECF No. 28), which severed Count Four for trial by separate jury. (*Id.*; ECF No. 48, Order Granting Relief.) Attorney Mack also made numerous other pretrial filings and motions in anticipation of the trial start date. (*See* ECF No. 49, Witness List; ECF Nos. 57–60, 66, Motions for Writ of Habeas Corpus ad testificandum.) In addition, he raised numerous challenges to evidence on the first day of trial, informing the court "there's an oral motion in limine that I wanted to make with respect to some of the exhibits that the Government plans on introducing," and

-6-

that it was being raised in an oral motion "because Mr. Fletcher and I haven't always been on the same page as to whether or not I would be permitted to make that motion in writing." (ECF No. 209, Tr. at PageID 1495.) In particular, Attorney Mack argued that exhibits of music videos and Facebook live videos showing Fletcher should be excluded. (*Id.* at PageID 1495–1508.) Thereafter, he prepared a Stipulation as to prior convictions, so that portions of video exhibits wherein Fletcher admitted his possession of a firearm would be redacted. (*Id.* at PageID 1506–08; ECF No. 146, Stipulation.)

Finally, Attorney Mack represented Fletcher during the four-day jury trial on Counts One, Two, and Three, which began on April 12, 2022, and ultimately resulted in guilty verdicts. (ECF Nos. 69–72, Trial Minutes; Counts I–III Jury Verdict.)  However, before the separate jury trial on Count Four, Attorney Mack filed a Motion to Withdraw as Counsel, (ECF No. 76), on April 20, 2022. The Motion explained withdrawal was needed because: "the attorney-client relationship has broken down during the last couple of weeks. Mr. Fletcher does not believe the undersigned is working in his best interest." (*Id.* at PageID 495.) Moreover, it highlighted that, "[d]uring the course of the trial the Defendant was very disruptive and made threats to physically assault the undersigned." (*Id.*) Accordingly, Attorney Mack asked "to be removed from the case as it relates to the last pending count." (*Id.* at PageID 496.) The court granted his Motion to Withdraw, and proceeded to appoint Fletcher new counsel to represent him in his upcoming trial on remaining Count Four. (04/27/2022 Dkt. Entries, Hearing Minutes & CJA 20 Appointment of Attorney.)

　　3)　　Attorney Paul Flannery for Severed Trial on Count Four

On April 27, 2022, Fletcher's third attorney, Paul M. Flannery ("Attorney Flannery"), was appointed to serve as defense counsel in the trial on Count Four. (*Id.*) Attorney Flannery represented Fletcher throughout pretrial proceedings, including filing three Motions in Limine leading to trial,

-7-

(ECF Nos. 94–96), all of which were granted. (ECF No. 102, Order at PageID 734.) He also attended Pretrial Conferences, alongside Fletcher, including one where they requested the matter be set for trial "as soon as possible." (09/07/2022 Dkt. Entry, Conference Minutes.) However, the court thereafter granted an Unopposed Motion for Continuance of Trial, (ECF No. 100), pending resolution of the parties' simultaneously-requested Order of Competency to Stand Trial. (*Id.*) Thus, "[t]he jury trial set for October 24, 2022 [was] [t]hereby continued until there [was] a determination as to Defendant's competency." (ECF No. 103, Order at PageID 735–36.)

On May 9, 2023, Attorney Flannery represented Fletcher at the Competency Hearing, where he was found competent to stand trial. (05/09/2021 Competency Hearing Minutes; ECF No. 112, Competency Order.) The court's competency finding was stated on the open record at the close of the Hearing, and neither party objected to that determination. (Competency Order at PageID 783.)

Additionally, with trial set for August 21, 2023, Attorney Flannery made multiple Pretrial Motions. (*See* ECF Nos. 113, 116, 119, 122, 137–38.) One was a Motion in Limine to Exclude Lay Testimony Provided by Agent on Firearm Slang, (ECF No. 122),[3] which was withdrawn three days

---

[3]  The Motion challenged "McCausland's anticipated testimony that a 'thirty' is slang for a Glock with a 30-round clip," arguing it was "expert testimony" and thus inadmissible "because the Government failed to designate SA McCausland as an expert witness." (ECF No. 122 at PageID 886.) The Government's Opposition, (ECF No. 130), responded it was not expert testimony, because McCausland was not testifying to interpret "specific slang, street language, and jargon," but rather was testifying "that he heard Defendant say, 'The thirty, the thirty up there,' which he believed referred to a firearm with a thirty-round magazine. Thus, rather than interpreting 'words unfamiliar to an ordinary person,' SA McCausland will testify that he heard the ordinary term "thirty" and made a logical conclusion as to what was being talked about." (*Id.* at PageID 923.) The Opposition also stated if the sufficiency of McCausland's basis to testify about this was challenged, then the Government may have had to introduce video evidence it previously indicated it would not introduce at trial, to establish that basis. (*Id.* at PageID 921–22.) Four days later, defense counsel withdrew the Motion. (ECF No. 136.)

before trial because, "[t]he parties have resolved this issue." (ECF No. 136 at PageID 983.) The day before trial, on August 20, 2023, Attorney Flannery filed two final Motions in Limine, (ECF Nos. 137–38), which were resolved on the record. In conversation with the court and all counsel on the first day of trial, Attorney Flannery clarified those Motions were "resolved as moot," because the first was premised on a "misunderstanding . . . as to what the agent was going to testify about . . . that's resolved," and the second was premised on a misunderstanding . . . that the Government was going to be using some sort of enhanced footage or alter slow down [sic]. And I guess they're not." (ECF No. 214, Tr. at PageID 2321.) Attorney Flannery also spoke to "other preliminary matters" that Fletcher asked him to raise, including having the Government confirm it "complied with all discovery obligations," and expressing that: "Fletcher would like to have an opportunity to raise a couple of issues . . . they don't relate to issues of evidence or argument regarding this trial. Some of the discovery issues . . . Fletcher's asked me for an opportunity to address you at some point." (*Id.* at PageID 2323–24.)

Fletcher was represented by Attorney Flannery during his three-day trial on Count Four, which, as indicated previously, resulted in a guilty verdict on August 23, 2023. (ECF Nos. 140–41, 143, Trial Minutes; ECF No. 148, Count IV Verdict.) Thereafter, Fletcher's Sentencing was "deferred until resolution of 5:21 CR 707," his escape case. (08/29/2024 Dkt. Entry, Order.) After Fletcher was found guilty in that case, (5:21CR707 Doc. # 22), sentencing was set for both cases, "to be held in tandem," on February 2, 2024. (01/02/2024 Dkt. Entry, Notice of Sentencing; 02/22/2024 Dkt. Entry, Sentencing Minutes.)

Thereafter, Attorney Flannery continued to represent Fletcher through Post-Conviction and Sentencing Proceedings. He filed successful Motions for Leave to File Under Seal, (ECF Nos.

152–53, 160–61), and then filed sealed Letters for Consideration at Sentencing, (ECF No. 154), and a sealed Sentencing Memorandum. (ECF No. 163.) He also appeared as counsel at Fletcher's Sentencing on February 22, 2024. (02/22/2024 Dkt. Entry, Sentencing Minutes.)[4] After Judgment was entered, Attorney Flannery timely filed a Notice of Appeal to the Sixth Circuit, (ECF No. 166), appealing "final judgment in case numbers 5:20-cr-00482 (Doc. No. 164) and 5:21-cr-00707 (Doc. No. 28) entered on February 28, 2024." (ECF No. 166.) He also requested and obtained numerous Transcripts of Proceedings from this court. (ECF Nos. 167–76.)

However, Attorney Flannery's representation of Fletcher ceased on March 22, 2024, when the Sixth Circuit granted his Motion to Withdraw, (ECF No. 177, 6th Cir. Appeal Order), and appointed new counsel for the appeal. (ECF No. 178, 6th Cir. Remark Appointing CJA Counsel Kevin Schad.)

## C.     Procedural History

Fletcher gave notice that he was appealing the Judgments against him on March 12, 2024. (ECF No. 166; 5:21CR707 Doc # 30.) The Sixth Circuit consolidated his two cases on direct appeal, and ultimately affirmed his convictions and sentences on all Counts, issuing a True Copy of Mandate to that effect on May 5, 2025. (ECF No. 219; 5:21CR707 Doc # 53.)

On June 3, 2025, Fletcher filed a Motion to Appoint Counsel, (ECF No. 220), requesting attorney assistance to file Section 2255 and Compassionate Release Motions. (*Id.* at PageID 2606.) The court explained that there is no guaranteed right to appointed counsel on such matters, but

---

[4]      Also present with Fletcher at Sentencing was Kelsey Baughman, Flannery's co-counsel and associate attorney at his firm; and Kevin Spellacy, who represented Fletcher in his escape case. (*Id.*; *see also* 10/24/2022 Dkt. Entry, Appointment of Co-Counsel Baughman; 5:21CR707 Dkt. 11/05/2021, Spellacy CJA Appointment.)

-10-

"refer[red] the request to the Federal Public Defenders Office to see if they feel it is appropriate to offer assistance." (06/05/2025 Dkt. Entry, Order.)

On June 24, 2025, Fletcher filed the instant Motion to Vacate the Judgment against him. (ECF No. 221; 5:21CR707 Doc # 55.)[5] Fletcher then filed multiple Supplements, advancing additional arguments for vacating the Judgment in Case No. 5:20 CR 482. He filed three *pro se* Supplements, on June 27, 2025; June 30, 2025; and on July 1, 2025. (ECF. Nos. 223–25.) A few months later, Fletcher filed another *pro se* Supplement/Motion, (ECF No. 228), which he titled "2255 Motion #2." (*Id.* at PageID 2680.) On December 9, 2025, the Federal Public Defender filed a Supplement, (ECF No. 231), on Fletcher's behalf, representing him in § 2255 proceedings for Case No. 5:20 CR 482. (FPD Suppl.; *see also supra* 1 n. 1) On the same day, counsel also filed the instant Motion to Expand the Record Under Habeas Rule 7, (ECF No. 230), on Fletcher's behalf.

The Government filed its Opposition, (ECF No. 234), on February 27, 2026. The Federal Public Defender filed its Reply, (ECF No. 236), on March 26, 2026. Fletcher also filed a one-page *pro se* Reply, (ECF No. 237), on June 5, 2026, requesting hearing, and arguing, "[a]lthough the prosecution says . . . the courts had addressed issues . . . the claims I make today in my 2255 Motion ha[ve] never been addressed." (Fletcher Reply at PageID 2756.)

As for Fletcher's related Escape case and conviction, ( Case No. 5:21 CR 707), Fletcher makes no argument for § 2255 relief regarding that case. The Federal Public Defender informed the

---

[5]        Fletcher seeks § 2255 relief only from his convictions in Case No. 5:20 CR 482: felony firearm possession (Counts I and IV), possession with intent to distribute drugs (Count II), and possession of firearm in furtherance of drug offense. (Count III).
Although he also filed the same § 2255 Motion in his other Case No.5:21 CR 707, that case only involved his escape from custody conviction, which he does not challenge in any of his filings.

court that "she will not be supplementing any claims" in that case, (FPD Suppl. at PageID 2693 n.1; 5:21CR707 Doc # 61 at PageID 696), and the only other filing from Fletcher in that case is identical to his Third Supplement in Case No. 5:20 CR 482, (ECF No. 225), and raises no issues related to the escape case. (5:21CR707 Doc # 57.) In sum, Fletcher does not make any arguments about why the proceedings or outcome of his escape case warrant habeas relief, and he did not file a Reply in that case. (*See generally* 5:21CR707 Dkt.) Furthermore, Fletcher clarifies in his Reply in Case No. 5:20 CR 482 that his "§ 2255 Motion only pertains to the April 2022 trial," *i.e.*, his firearm and drug convictions. (Fletcher Reply at PageID 2755.)

Finally, the parties treat all § 2255 filings in Case No. 5:20 CR 482 as one habeas petition.[6] The court concurs, and Petitioner's Motions and Supplements are construed as a single Motion to Vacate. Relatedly, citations hereinafter refer to the docket in Case No. 5:20 CR 482, unless indicated otherwise.

## II.   LEGAL STANDARD

### A.   Motion to Expand the Record

As an initial matter, the court will resolve Petitioner's pending Motion to Expand the Record. (ECF No. 230.) The Motion seeks expansion of the record to enter an "affidavit from Imere Green, Mr. Fletcher's son, dated December 18, 2025," on the basis that it "contains essential information that can assist the Court in deciding Mr. Fletcher's [IAC] claims raised in his Motions and Supplements under [§ 2255]." (*Id.* at PageID 2689.)

Rule 7 of the Rules Governing Section 2255 Proceedings states that courts "may direct the parties to expand the record by submitting additional materials relating to the petition," and

---

[6]      (Opp'n at PageID 2722 nn.1–2; FPD Suppl. at PageID 2702 n.2.)

"[a]ffidavits may also be submitted and considered as part of the record." *Rules Governing Section 2255 Proceedings*, § 7(a)–(b). In doing so, "the judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness." *Id.* § 7(c).

Fletcher sought to expand the record for Imere Green's Affidavit on December 25, 2025. The Government did not oppose the Motion, and responded to the substance of the Affidavit in its Opposition. (Opp'n at PageID 2729–32.) Thus, because the Affidavit is related to significant issues in the Motion, the Government has responded to the additional material therein, and there is no opposition to the Motion, the court hereby grants the Motion to Expand the Record. (ECF No. 230.)

**B.      Section 2255 Relief**

Under 28 U.S.C. § 2255, a federal prisoner may attack the validity of his sentence by filing a motion to vacate in the district court where he was sentenced. Section 2255 sets forth the following bases upon which a federal prisoner may claim relief:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). A petitioner alleging a constitutional error must generally show a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). A petitioner alleging a non-constitutional error must show a "'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Moreover, to prevail on a § 2255 Motion, "a prisoner must clear a significantly higher hurdle

-13-

than would exist on direct appeal," because "[o]nce the defendant's chance to appeal has been waived or exhausted . . . [the court is] entitled to presume he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164, 166 (1982). Along that vein, "a § 2255 petition may not be employed to relitigate an issue that was raised on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Vega v. United States*, No. 1:15CR296, 2018 WL 4656229, at *3 (N.D. Ohio Sept. 27, 2018) (collecting cases) (citations omitted). However, that caveat does not apply to claims of ineffective assistance of counsel, which may be asserted under Section 2255 "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Finally, insofar as the motion, filings, and records of proceedings show, the court should "determine whether an evidentiary hearing is warranted" on the issues. *Rules Governing Section 2255 Proceedings For the United States District Courts*, § 8(a) (1976) (approved as amended Pub. L. No. 94-426, 90 Stat. 1334); *see also* 28 U.S.C. § 2255(b). The district court must discuss the petitioner's specific allegations, and "to forego an evidentiary hearing, the district court must determine that the motion, files, and records of the case 'conclusively show' that the petitioner is entitled to no relief." *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017).

### III. DISCUSSION

Fletcher filed his initial *pro se* § 2255 Motion, (ECF No. 221), on June 24, 2025. In it, he "ask[s] the courts [sic] to grant me a new trial with full discovery," as well as vacate his firearm convictions to "be resentenced using [his] 841 conviction" under the Sentencing Guidelines. (Mot. at PageID 2609.) As a *pro se* litigant, Fletcher's allegations are "'entitled to a liberal construction,' which may 'require[] active interpretation in some cases to construe a *pro se* petition to encompass

-14-

any allegation stating federal relief." *MacLloyd*, 684 F. App'x at 558 (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).  Upon thorough and liberal review of the Motion and Supplements, the court discerns three overarching categories encompassing Fletcher's allegations for habeas relief: (1) Due Process and Constitutional Errors at Trial, for alleged prosecutorial misconduct and alleged false or improperly admitted evidence, (2) Due Process and Constitutional Errors at Sentencing, for alleged violations of Fletcher's Second, Fifth, and Sixth Amendment rights, and alleged improper application of Sentencing Guidelines, and (3) Ineffective Assistance of Counsel ("IAC") claims, for various alleged failures during discovery, trial, and sentencing. Within these three buckets, Fletcher argues numerous Grounds for Relief, only some of which are legally cognizable under § 2255.

## A.    Grounds for Relief

First, the court will outline the varying Grounds for Relief that Fletcher asserts entitle him to § 2255 relief, with relevant supporting allegations.

### 1)    Petitioner's Initial Motion

First, Fletcher's § 2255 Motion, filed *pro se*, stated the following Grounds and allegations:

| | |
|---|---|
| **GROUND ONE** | **Ineffective Assistance of Counsel for Inadequate Discovery** |
| *ALLEGATION* | "[M]y attorney was ineffective in not providing me with complete discovery. . . . The district court erred in not holding a hear[ing] on Fletcher['s] repeated claims that I was denied discover[y] . . . [which is] either a[n] error on the court[] or ineffective counsel."(Mot. at PageID 2609 (cleaned up).) |
| *ALLEGATION* | "My attorney was also ineffective by not sending out subpoena[s] to the witnesses I requested for trial. I asked to subpoena the state trooper th[at] followed the chase in the airplane. I also asked my attorney to [subpoena] Savannah Brice, Imere Green, Gavin Williams[,] which my attorney never [did]." (*Id*. (cleaned up).) |
| **GROUND TWO** | **Denial of Sixth Amendment Right to Self-Representation** |
| *ALLEGATION* | "I also wrote the Judge a letter asking to be *pro se* which I never was |

able to do." (*Id.*)

| | |
|---|---|
| **GROUND THREE** | **Failure to Provide Discovery; and/or Newly Discovered Evidence** |
| *ALLEGATION* | "Not receiving full discovery it made it [sic] impossible to prepa[re] for trial . . . . After my first trial I learn[ed] about newly discovered eviden[ce], . . . [that] was a statement made by a government witness (Hollinshed) after discovering the statement . . . I addressed the courts about it on August 21, 2023, [to] which the court responded I needed to address that issue on a 2255 Motion." (*Id.* (cleaned up).) |

| | |
|---|---|
| **GROUND FOUR** | **Erroneous Application of Sentencing Guidelines for Criminal History Category and Points** |
| *ALLEGATION* | "[S]entenced in the wrong category, I was supposed to be in Category 5 but was given a point for . . . driving under su[spended license], and the point gave me 13 points but I should only [have] had 12 points." (*Id.* at PageID 2610.) |
| | . . . |
| *ALLEGATION* | "Also my offense level was driven by a 922g so my offense level should have been 14 . . . [for a sentence of] 37–46 months plus the 924c for a total of 97–106 months . . . ." (*Id.* (cleaned up).) |

| | |
|---|---|
| **GROUND FIVE** | **Double Jeopardy for Firearm Convictions** |
| *ALLEGATION* | "I would like[] to challenge my 924c and 922g conviction because [they are] both unconstitutional. . . . [B]eing charged with 924c and 922g is double jeopardy [as] both 924c and 922g is possession of a firearm and the court shouldn't charge someone with possession of the same firearm two times." (*Id.* at PageID 2611–12 (cleaned up).) |

2)      Petitioner's Supplements to the Motion

After his first Motion, Fletcher filed three Supplements, (ECF Nos. 223–25),[7] setting forth

additional arguments.

| | |
|---|---|
| **GROUND SIX** | **Improper Admission of Music Video Evidence** |
| *ALLEGATION* | "The court used highly prejudicial evidence which denied [Fletcher] a fair trial. . . . The Court allowed the Government to use a music video . . . false evidence that's made only for entertainment . . . . The |

---

[7]     After their introduction in this Section, citations to Fletcher's Supplements and second-filed Motion will be cited using the shorthand signal for Motion ("Mot."), in the interest of clarity, given that all Petitioner's filings are construed as a single Motion. *See supra* Section (I)(C) n. 5.

Government said . . . that [it] was showing the music video to the jury to show the 924c conviction. . . . [T]he video had nothing to do with the case at hand[,] not even the same type of firearm in the video." (ECF No. 223, First Suppl. at PageID 2617.)

| | |
|---|---|
| **GROUND SEVEN** | **Ineffective Assistance of Counsel for Failure to Object** |
| *ALLEGATION* | "My counsel was ineffective by not objecting to evidence and testimony from witnesses as to the testimony related to threatening a police officer." (ECF No. 224, Second Suppl. at PageID 2620.) . . . |
| *ALLEGATION* | "One of the Government witnesses (Hollinshed) . . . testified he spoke to law enforcement 2 times once one week before trial then another time 3 days before trial. . . . It wasn't possible [for me] to prepare for trial. This was mention[ed] at trial . . . . My attorney was ineffective by not objecting to this and I told him to . . . I spoke up in court myself. . . . the testimony from (Hollinshed) was damaging and false and I wasn't able to prepare for it." (*Id.* at PageID 2622.) |
| *ALLEGATION* | "False statements prosecution made to the court and . . . statements altered by law enforcement or the prosecution. . . . My attorney was ineffective by not addressing the court or objecting to these matters . . . ." (ECF No. 225, Third Suppl. at PageID 2625 (cleaned up).) |
| | |
| **GROUND EIGHT** | **Ineffective Assistance of Counsel in Preparing for Trial** |
| *ALLEGATION* | "My counsel was also ineffective by not filing for a Suppression Hearing like I asked him to do[.] He just threw me under the bus . . . . If law enforcement interviewed a witness on Friday then he testif[ied] on Monday 3 days later [there is] no way the defense would have time to prepare a defense. (Second Suppl. at PageID 2620–21.) |
| *ALLEGATION* | "My counsel was also ineffective by not addressing the court about him not being ready for trial because he stated it was a lot of discovery and he didn't have enough time to review all the discovery." (*Id.* at PageID 2620.) |
| *ALLEGATION* | "Counsel was also ineffective by not going over my case with me[;] I had other ideals [sic] and evidence to show at trial that my counsel didn't help with. I also was limited a chance to give my ideals [sic] because I was force[d] to sit on the far side of the table away from my lawyer during trial." (*Id.*) |
| | |
| **GROUND NINE** | **Ineffective Assistance of Counsel During Sentencing** |
| *ALLEGATION* | "Attorney was also ineffective by not showing up at my sentence after |

-17-

he was the lawyer at trial.

. . .

Also ineffective by removing himself off my case as soon as he lose the trial and this hurt me in filing motions on the prosecution . . . . My counsel knew he was ineffective so he removed hisself [sic] from my case on his own." (*Id.*)

**GROUND TEN**    **Prosecutorial Misconduct**

*ALLEGATION*    "False Testimony By a Government Witness[:] . . . . [A]t trial Anderson stated I was in the backseat of the car when he s[aw] me. . . . That statement was false and damaging because the firearm was found in the backseat . . . and the prosecution . . . knew these statements to be false because they had video evidence showing it to be false but the prosecution . . . allowed the false testimony into court and I was damaging [sic]." (Second Suppl. at PageID 2621.)

*ALLEGATION*    "Discovery was due by October 2020 which the Government did not comply with. [On] January 7, 2021[,] my attorney told the court there was discovery we didn't have . . . . [T]he Government admitted [there were] statements that the Government didn't provide to the defense. . . . [P]rosecution provide [sic] over 2,500 pages of discovery and over 3,000 videos . . . to hide discovery that they [were] not giving to me or my attorneys . . . ." (Third Suppl. at PageID 2625 (internal citations omitted) (cleaned up).)

*ALLEGATION*    "[L]aw enforcement or the prosecution altered statements from the Government witnesses and on October 7, 2021, I addressed the court about these statements . . . Read the transcripts and see the false statements prosecution made to the court and see [they were] altered." (*Id.* (cleaned up).)

3)    Petitioner's Final Supplement/Second Motion

Some months later, on October 15, 2025, Fletcher filed his "§ 2255 Motion #2," (ECF No. 228), which discusses three Grounds for Relief; two of which build upon arguments Fletcher already raised in his Supplements. It asserts: (1) Government Misconduct, citing former FBI Director James Comey's indictment in September 2025; (2) False Testimony by Government Witness, asserting both due process and ineffective assistance of counsel claims, and citing specific portions of Trooper

-18-

Anderson's testimony at trial and the suppression hearing; and (3) Improper Sentence, reiterating Fletcher's belief that the court improperly applied the Guidelines, and also expanding on his claim that his sentence under both 924(c) and 922(g) amounts to double jeopardy. (*Id.* at PageID 2681–84.)

Although the latter arguments are repetitive, because Fletcher's arguments differ slightly from previous filings, the court nonetheless includes the Grounds asserted in his Final Supplement:

> **GROUND ELEVEN  Misconduct by FBI Director**
> *ALLEGATION*  "[A]t the time of my indictment[,] the FBI and FBI Director [were] involved in crimial [sic] activity and is now being indicted for the crimes . . . Due to the circumstances . . . I'm asking for relief because [there is] no way to trust the FBI was being respondible [sic] with federal cases." (Second Mot. at PageID 2681.)

> **GROUND TWELVE False Testimony: (1) Due Process Claim, and (2) IAC Claim**
> *ALLEGATION*  "Trooper Anderson made false testimony . . . to place me in the backseat of the vehicle where the firearm was located. . . . This statement was false[;] evidence showed I was driving . . . . The prosecutor knew these statements to be false but never made a[n] attempt to correct his witness.
>                . . .
> *ALLEGATION*  Anderson made false testimony during trial and during the suppression hearing . . . . But my attorney was ineffective by not objecting to the false testimony[]." (*Id.* at PageID 2681–82.)

In addition, Fletcher's Second Motion/Final Supplement further explains allegations underpinning his challenges to his sentence, which he raised in his initial Motion. Specifically, it adds to Fletcher's two arguments that: (i) his criminal history category and points were improperly calculated[8]; and (ii) his firearm convictions violate the Fifth Amendment Double Jeopardy Clause.[9]

---

[8]  "I received a point for being under sanction for driving under suspension which I shouldn't have received so I should have been in Category 5 [of the Sentencing Guidelines]." (*Id.* at PageID 2684.)

"The 2 point enhancement for threats on a officer should have been dismissed because the allege [sic] threats [were] made . . . before I was read my Miranda rights. . . . The 2 point enhancement for bribing a government witness [also]

### 4) Federal Public Defender Supplement

On December 29, 2025, the Federal Public Defender took on Fletcher's case and filed a Supplement to Fletcher's IAC claims, arguing: "counsel was ineffective for: [(1)] failing to call Imere Green to testify; (2) failing to obtain all discovery in his case; and (3) failing to object to the admission of prejudicial statements during trial." (FPD Suppl. at PageID 2702.) The Supplement focuses solely on alleged deficiencies of counsel during discovery and trial, arguing Fletcher received constitutionally ineffective assistance of counsel, because his trial representation fell below an objective standard of reasonableness and prejudiced his case. (*Id.* at PageID 2702–09.)

In the ensuing discussion, the court first considers (1) Fletcher's claims of Due Process and Constitutional Errors at Trial, for alleged prosecutorial misconduct and alleged false or improperly admitted evidence. It will then discuss (2) Fletcher's claims of Due Process and Constitutional Errors at Sentencing, for alleged violations of Fletcher's Second, Fifth, and Sixth Amendment rights, and alleged improper application of the Sentencing Guidelines. Lastly, it addresses (3) Fletcher's IAC claims, for counsel's alleged unreasonable errors before, during, and after trial.

### B. Whether Fletcher Has Shown Due Process and Constitutional Errors at Trial

---

should have be[en] dismissed." (*Id.* (cleaned up) (internal citations omitted).)

"[M]y 108 month sentence should be 51 months . . . . [J]udge should have followed the law before applying his discretion and used my 841 count to drive the guideline[,] then [used] discretion when applying the lil [sic] crack to powder disparity . . . . (*Id.* at PageID 2684–85 (cleaned up).)

[9] I was sentenced to 108 months for 922g [and] . . . 60 months for 924c[.] The two counts was ran consecutive [sic] . . . for the possession of the same firearm. . . . Either the 922g or the 924c should have been dismissed or the two counts should have been ran concurrent [sic]." (*Id.*)

-20-

First, Fletcher contends he is entitled to § 2255 relief because numerous errors in his proceedings denied him due process or were errors of a constitutional magnitude. The Government argues Fletcher "largely reiterates arguments already raised and rejected on direct appeal"—namely, his "allegations about withheld discovery, his challenges to the constitutionality of 18 U.S.C. § 922(g), and his complaints about witness subpoenas." (Opp'n at PageID 2723 (citing *United States v. Fletcher*, No. 24-3234/3235, slip op. at 1–7 (6th Cir. Apr. 9, 2025).) The Government asserts Fletcher "identifies no valid grounds for collateral relief." (*Id.*) In his Reply, Fletcher denies that he raises issues already litigated, and contends that a hearing is needed. (Fletcher Reply at PageID 2755–56.)

To allege a constitutional error, a petitioner must generally show a substantial and injurious effect or influence on proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). For a non-constitutional error, a petitioner must show a "'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citation omitted). The movant bears the burden of establishing his right to relief. *See*, *e.g.*, *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003). Furthermore, "a § 2255 petition may not be employed to relitigate an issue that was raised on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Vega v. United States*, No. 1:15CR296, 2018 WL 4656229, at *3 (N.D. Ohio Sept. 27, 2018) (collecting cases) (citations omitted).

1)       Alleged Failure to Provide Full Discovery

In the instant Motion, Fletcher discusses alleged issues with discovery extensively. (Mot. at PageID 2609–11.) His arguments are far from new, and do not warrant § 2255 relief. As Fletcher

himself notes, he has "addressed the courts about it" multiple times; making these same allegations that he was denied discovery "at a Suppression Hearing on January 7, 2021, . . . again on April 5, 2021 . . . [and] again on October 7, 2021." (*Id.* at PageID 2609.) Now, he again asserts he was denied discovery, which was "either a[n] error on the courts or ineffective counsel." (*Id.* at PageID 2611.)

First, Fletcher states plainly that this § 2255 Motion pertains only to his "April 2022 trial" on Counts One, Two, and Three, (Fletcher Reply at PageID 2755), so any allegations about discovery in his severed trial in August 2023 for Count Four cannot possibly warrant the collateral relief he seeks. Moreover, his assertion that this court should have dealt with his discovery concerns differently is an issue that was already addressed on direct appeal. The Sixth Circuit found this court did not err when it declined to conduct a hearing on Fletcher's claims he had not received full discovery. *Fletcher*, slip op. at 2–4. The record did not support a finding that any discovery had been withheld, nor that Fletcher was prejudiced by not receiving discovery earlier. *Id.* Here, Fletcher argues the same, and has not presented new evidence, an intervening change in the law, or any other "highly exceptional circumstance[]" which might warrant "relitigating [this] issue that was raised on direct appeal."*Vega*, 2018 WL 4656229, at *3. This is insufficient. *Id.*; see also *Frady*, 456 U.S. at 164–65 ("a collateral challenge may not do service for an appeal"). Thus, Fletcher's claim that he was deprived of full discovery is foreclosed and without merit.

2)      Alleged Improper Admission of Prejudicial Evidence

Fletcher also challenges the admission of videos into evidence, arguing the court improperly "allowed the Government to use a music video to show relevance of 924c." (Mot. at PageID 2617.) He argues music videos are "just to entertain," so admitting them was "prejudicial," and allowed the Government to use "false evidence thats [sic] made only for entertainment to get a conviction for the

924c charge" in Count Three. (*Id.*) Finally, Fletcher asserts "no court should be able to use a movie or music video to show a crime because that's only for entertainment." (*Id.*) These arguments fail.

This claim was already raised and fully resolved on direct appeal. During the first day of trial, on Fletcher's behalf, Attorney Mack challenged multiple exhibits entered by the Government, including these videos, and the court heard arguments from the parties. (*See* ECF No. 209, Tr. at PageID 1514–41.) Ultimately, the court admitted a video depicting Fletcher with drugs and a firearm, introduced by the Government for the purpose of "show[ing] that [Fletcher] had possessed this gun, which they maintain[ed] is the same gun on a prior occasion, so therefore, the jury could draw the inference or conclusion that he possessed it." (ECF No. 210, Tr. at PageID 1567.) The court explained Rule 403 balancing revealed the video's probative value was not outweighed by its danger of unfair prejudice. (*Id.*) However, the court went on to exclude a different video, finding its depiction of Fletcher engaged in alleged criminal activities, not presently charged, was not sufficiently "tied to what's involved in our case," and so would mislead the jury "off track." (*Id.* at PageID 1570–73.)

On direct appeal, Fletcher took issue with the court admitting any of the Government's video exhibits, discussing "videos showing him allegedly cooking crack cocaine and holding an alleged brick of cocaine." *Fletcher*, slip op. at 6. That same video "also shows him while doing that in possession of a firearm." (ECF No. 209, Tr. at PageID 1514–15, 1539–41.) Thus, here, Fletcher similarly challenges "the music video [being shown] to the jury [for] the 924c conviction" for Possession of a Firearm in Furtherance of a Drug Trafficking Offense. (Mot. at PageID 2617 (cleaned up).) To determine whether the court erred in allowing the Government to use video exhibits at trial, as Fletcher argued, the Sixth Circuit reviewed the court's aforementioned ruling admitting the video

exhibit. Ultimately, it was not necessary for the Sixth Circuit to fully discuss the merits of the court's evidentiary ruling on the videos, as it resolved the matter by conclusively determining that any such alleged "error in admitting the videos was harmless" and did not "affect[] the outcome of trial." *Fletcher*, slip op. at 6–7 (citing *United States v. Dunnican*, 961 F.3d 859, 871 (6th Cir. 2020)).

Fletcher does not present any new arguments or point to intervening changes in the law which might warrant re-litigating this matter after it was resolved on appeal. Moreover, given the Sixth Circuit's finding that the outcome of his trial was unaffected by the court admitting videos, it certainly cannot be said that Fletcher is entitled to § 2255 relief because the music video substantially impacted or prejudiced his case. Accordingly, this claim fails.

3)      Alleged Prosecutorial Misconduct

Fletcher's next claim is that the Government engaged in prosecutorial misconduct when it allegedly withheld or altered statements in discovery, and willfully employed perjured testimony. (Mot. at PageID 2625.) These arguments fail.

a.      *Allegations of Knowingly Withheld or Altered Discovery*

First, Fletcher's arguments that the prosecution withheld discovery or altered witness statements were already raised and resolved on appeal. Fletcher's claim on direct appeal was that this court should have conducted hearings regarding whether discovery was withheld or altered. In concluding this court did not err by not holding separate hearings when Fletcher raised these discovery concerns in pretrial conferences, the Sixth Circuit found: (1) "[N]othing in the record established that the prosecution had withheld discovery from the defense or that Fletcher had not been provided discovery pertinent to the suppression motion," (2) "[E]vidence presented explained the discrepancies in the reports and did not suggest that the prosecutor was suppressing or altering

-24-

information," and (3) "[N]othing in the record suggested that the prosecution violated its discovery obligations or that Fletcher was prejudiced by not receiving the discovery earlier." *Fletcher*, slip op. at 2–4. These findings hold true here, as Fletcher does not make new arguments or support for his claim that discovery was knowingly and materially withheld or altered. Moreover, he does not identify an intervening changes in the law or another exceptional circumstance which might warrant the court re-litigating the same arguments already addressed on direct appeal. Moreover, the court's thorough review of the record to resolve this Motion again revealed no evidence of withheld discovery or altered discovery materials. Accordingly, Fletcher's claims that there was withheld discovery or altered materials in discovery is without merit.

> b. *Allegations of Newly Discovered Witness Statements*

In addition, Fletcher argues he should receive a new trial because of an alleged new discovery he made "after [his] first trial," of a non-specified "statement made by a government witness (Holinshed) [sic]." (Mot. at PageID 2609.) This claim, again, was already raised by Fletcher before the Sixth Circuit. On direct appeal, Fletcher "contend[ed] that the district court should have conducted a hearing when, in August 2023 during his second trial, he informed the court that he had received witness statements that were not disclosed during his first trial."[10] *Fletcher*, slip op. at 3. The

---

[10] The full relevant procedural background is as follows: in August 2023 during his separate trial on Count Four, Fletcher told this court that discovery revealed witness statements that, according to Fletcher, he "never received in the initial discovery that I needed three years ago" during his first trial on Counts One, Two, and Three. (Tr. at PageID 2329.) At defense counsel's request, the court spoke with Fletcher on the record, (*id.* at PageID 2327–31), and explained it was not the proper forum at this time, as "this is a different case . . . there's no remedy in this case." (*Id.* at PageID 2330.) Fletcher explained: "I just wanted to say that because I just know I'm appealing . . . don't want my remedies to get exhausted and I miss my opportunity to argue about my discovery." (*Id.*) Then, on appeal, Fletcher argued the court should have held a hearing on this concern. The Sixth Circuit

-25-

Sixth Circuit nonetheless upheld the Judgment in his case, finding overall that "evidence was sufficient to show Fletcher possessed a firearm in furtherance of drug trafficking," and there was "considerable evidence that he committed the three crimes at issue." *Id.* at 6. Here, Fletcher has not established any exceptional circumstances warranting re-litigation of the same argument.

However, in any event, this is not a cognizable claim under Section 2255. The mere fact Fletcher alleges he learned of statements after trial is not a valid basis for collateral relief, absent a showing such statements were previously knowingly withheld by the prosecution, or call into question the validity of the jury's guilty verdict. Fletcher has not made that showing. He does not assert any specific statements were knowingly withheld until after trial. (*See generally* Mot. at PageID 2609.) Moreover, as discussed above, the Sixth Circuit affirmed the record showed no evidence of withheld or altered discovery, *see Fletcher*, slip op. at 2–4, and still now, Fletcher does not point to *any* support to establish that any witness testimony, or other evidence, was not previously made available to the defense.

Furthermore, Fletcher does not argue the alleged newly discovered statements establish his innocence or cast doubt on the validity of the jury's verdict. (*See generally* Mot. at PageID 2609.) Thus, insofar as Fletcher intended to argue that his guilt is undermined by newly discovered evidence obtained after trial, the argument fails because it is a mere conclusory allegation. Fletcher neither identifies such evidence, nor explains its influence on the outcome of his trial. He does not provide the content of alleged newly discovered statements or evidence, explain when and how it was discovered, or why it was not previously discoverable. And, in general, Fletcher does not claim that

---

explained the court did not err by not holding a hearing, because "Fletcher did not claim that he was lacking discovery for his upcoming trial, and his previous trial had ended over 16 months earlier." *Fletcher*, slip op. at 3.

such alleged new witness statements materially impact the jury's finding of guilt, or establish his innocence. Accordingly, this bare and conclusory claim fails.

### c.  Allegations of Perjured Testimony

Otherwise, Fletcher alleges prosecutorial misconduct on this basis that the Government knowingly used perjured testimony. His Reply asserts that he "proved all 3 prongs under *Napue* [*v. Illinois*, 360 U.S. 264 (1959)]," namely that: "(1) we know Trooper Anderson['s] testimony was false[,] (2) the prosecution knew Trooper Anderson's testimony was false due to a meeting the prosecutor had with Trooper Anderson[,] (3) without Anderson's false testimony the jury would [have] know[n] it was other's [sic] closes[t] to the firearm and I was not seated with the firearm." (Fletcher Reply at PageID 2755–56.) Specifically, Fletcher takes issue with Trooper Anderson's testimony that he saw Fletcher exit the vehicle's rear, because: "evidence show me [sic] in the front seat of the car so Trooper Anderson testified falsely trying to place me with the firearm in the backseat." (Mot. at PageID 2621.) However, the court finds Fletcher fails to show the Government engaged in prosecutorial misconduct by knowingly using perjured testimony.

First, Fletcher does not cite to or identify any portion of the record, or any other evidence, that might establish Trooper Anderson's testimony was knowingly false. Instead, he states "mere allegations . . . of legal conclusions" that the prosecution knowingly presented false evidence, "apart from allegations of fact supporting those conclusions." *Hoffa v. United States*, 339 F. Supp. 388, 398 (E.D. Tenn. 1972), *aff'd,* 471 F.2d 391, 393 (6th Cir. 1973). Such bare assertions are "legally insufficient to entitle a petitioner to relief or to require an evidentiary hearing." *Id.*

Moreover, even if, for the sake of argument, Trooper Anderson's recounting of events could be deemed 'false' testimony; Fletcher still cannot show the prosecution knowingly relied upon

materially false testimony. *See Napue*, 360 U.S. 264. On direct, Trooper Anderson testified that he "saw Joe Fletcher at the back left rear of the – behind the driver's seat of the vehicle . . . Outside [of the vehicle]." (Tr. at PageID 1815.) In between prompting Trooper Anderson to recall his observations from that day, the Government played video footage of Fletcher's arrest for the jury. (*See id.* at PageID 1819–40.) Thereafter, defense counsel cross-examined Trooper Anderson about his testimony that he "saw Mr. Fletcher exit the rear portion, rear side of the vehicle." (*Id.* at PageID 1846–48.) In the course of questioning, Trooper Anderson agreed that he "didn't know that Mr. Fletcher was the driver of the vehicle until [he] reviewed the video that the defense provided to the Government," but immediately also testified that, nonetheless, his own recollection of events "to this day" is that he "saw [Fletcher] getting out of that, coming out of that back rear passenger side on the left door." (*Id.* at PageID 1850.)

This sequence of events reveals that any discrepancy between Trooper Anderson's description of what he observed and the video footage of the chase, far from being concealed or falsified, was "fully and exhaustively presented and tried before the jury." *Hoffa*, 339 F. Supp. at 398. And, from that point, it was for the jury to weigh all of the evidence, including firsthand reports and testimony, as well as video footage, in rendering a verdict. *See, e.g.*, *id.* ("These matters were fully argued before the jury and the credibility of the witness was for the jury. When this testimony is viewed in context, and in light of the full record upon the trial, it could form no basis for a charge of knowing use of perjured testimony by the Government.") Therefore, this claim fails.

4) Alleged False Testimony by Witness as Standalone Due Process Claim

Fletcher seemingly also seeks to advance a standalone argument that he was deprived of due process at trial merely because Trooper Anderson's testimony contradicted video evidence, and was

thus "false." (Mot. at PageID 2681–83.) For reasons explained directly above, Fletcher cannot establish this was knowingly perjured testimony. In addition, however: "[a] matter to note at this point, . . . is that it is the *knowing use* by the Government of false evidence that constitutes the denial of due process." *Hoffa*, 339 F. Supp. at 392. Thus, a § 2255 petitioner cannot merely argue falsity of evidence, absent the requisite knowledge:

> An allegation of perjury, apart from an allegation of knowing use by the Government of that perjury, constitutes no basis for habeas corpus . . . as it alleges no error of constitutional dimensions. The credibility of witnesses is ordinarily for trial by the jury in the criminal trial. False evidence and perjury are matters that may be raised on the trial and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions.

*Id.* at 392–93. Therefore, any such argument by Fletcher fails.

5) Claim Regarding Misconduct by FBI Director

Fletcher also briefly argues that the criminal activities of FBI Director James Comey entitle him to habeas relief. (Mot. at PageID 2681.) This claim readily fails, as it is not grounds for collateral relief under Section 2255. Such a general, high-level criticism is not a valid basis for the court to grant the extraordinary relief of habeas, and says nothing about Fletcher's individual case. This argument plainly lacks merit.

6) Alleged Denial of Right to Proceed *Pro Se*

In addition, Fletcher claims that he "wrote the Judge a letter asking to be *pro se* which I never was able to do." (Mot. at PageID 2609.) He makes no other allegations, and does not cite to the letter or any other portion of the record.

A criminal defendant has a constitutional right to self-representation. However, because of the likely "detriment" to their case if they proceed *pro se*, the Supreme Court has found the defendant

must "knowingly and intelligently forgo" the "benefits" of being represented by counsel. *Faretta v. California*, 422 U.S. 806, 835 (1975). Accordingly, a defendant invoking their right to self-representation must "clearly and unequivocally declare[] to the trial judge that he wanted to represent himself and [does] not want counsel," so the court may ensure he is "made aware of the dangers and disadvantages of self-representation," on the record. *Id.* In this case, the record clearly contradicts Fletcher's claim that he was denied his right to self-representation.

There is no point at which Fletcher affirmatively stated he wished to represent himself and "[would] not voluntarily accept representation by counsel." *Id.* at 834. The record reflects only that Fletcher wrote a letter on or about January 19, 2021, because he was dissatisfied with his then-attorney Erik Jones. The letter stated, "I need a new attorney or I'll be my own attorney. I need this attorney removed." (ECF No. 204, Tr. at PageID 1367–68.) It is readily apparent that Fletcher's operative request in that letter was to be appointed new counsel; not to "clearly and unequivocally" proceed *pro se. Faretta*, 422 U.S. at 835. The court then addressed that letter extensively, on the record, in a hearing on February 23, 2021. (Tr. at PageID 1367–79.) The court, Fletcher, and counsel for both parties, discussed why Fletcher wanted current counsel to withdraw and new counsel to be appointed. The court expressly and repeatedly stated Fletcher would be given new counsel. At no time during this thorough discussion did Fletcher assert or suggest that he wished to represent himself rather than be appointed a new attorney, including when given the opportunity to speak.

Fletcher does not identify any support in the record for any other point in Proceedings that he asserted his right to self-representation. In fact, when Fletcher later again voiced dissatisfaction with his attorney after his trial on Counts One, Two, and Three, the court again appointed him new counsel for his trial on Count Four. And then, as before, Fletcher did not assert a desire to proceed

*pro se* rather than be appointed new counsel. Thus, this claim fails.

**C.      Whether Fletcher Has Shown Due Process and Constitutional Errors at Sentencing**

Initially, as the Government notes, (Opp'n at PageID 2736), Fletcher claims the court erred in sentencing generally are not appropriately raised in a § 2255 Motion. These errors rarely rise to the level of being so egregious as to be a fundamental miscarriage of justice warranting collateral relief. Nonetheless, the court below addresses Fletcher's arguments that his sentence is improper.

1)      Alleged Improper Criminal History Category & Points

First, Fletcher argues that the court incorrectly calculated his criminal history category and points. (Mot. at PageID 2612, 2684–85.) This argument is another example of Fletcher attempting to "relitigat[e] an issue that was raised on direct appeal." *Vega*, 2018 WL 4656229, at *3. Thus, for the same reasons the court has explained with regard to other matters herein raised which were already rejected by the Sixth Circuit, this claim fails.

2)      Alleged Double Jeopardy for Firearm Convictions

Second, Fletcher argues that his convictions under 18 U.S.C. §§ 922(g) and 924(c) running consecutively "is Double Jeopardy because I was sentenced to two consecutive sentences for the possession of the same firearm." (Mot. at PageID 2685.) He asserts this violates the Fifth Amendment's Double Jeopardy Clause, and "either the 922g or the 924c should have been dismissed or . . . ran concurrent." (Mot. at PageID 2685; *see also id.* at PageID 2612 (arguing the same).) However, Fletcher misunderstands the applicable legal standards and the applicable statutory text.

Initially, Fletcher's argument that his 924(c) conviction should have run concurrently, or else been dismissed, plainly fails. In *United States v. Chapman*, 551 F. App'x 850 (6th Cir. 2014), the Sixth Circuit outlined the inapplicability of the Double Jeopardy Clause to § 924(c) convictions:

-31-

> We begin interpreting a statute by looking at the text of the statute. [Section] 924(c)(1)(A) makes it a crime to use or carry a firearm during any crime of violence or drug trafficking crime. . . . [P]unishment is "in addition to the punishment provided for such crime of violence or drug trafficking crime."
>
> . . .
>
> Subsection 924(c)(1)(D) states that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." This language is clear and unambiguous. "No term of imprisonment" imposed under § 924(c) may run concurrent to "any other term of imprisonment."

*Chapman*, 551 F. App'x at 852–53. Here, the same reasoning applies, and plainly disposes of Fletcher's claim that he should not have been sentenced concurrently for his § 924(c) conviction.

Nor do the firearm convictions[11] in this case pose any other Double Jeopardy issues. Fletcher was properly "convicted of only one § 924(c) charge per underlying offense," *id.*, in Count Three, for Possession of A Firearm in Furtherance of A Drug Trafficking Offense, for his offense on June 24, 2020. (ECF No. 164, J. at PageID 1252.) In Count One, he was convicted of the aforementioned underlying offense committed on June 24, 2020, for Felon in Possession of a Firearm under §§ 922(g)(1) and 924(a)(2). (*Id.*)  These convictions do not raise double jeopardy concerns, given that: "[a] defendant may be convicted of multiple crimes arising from the same course of conduct so long as each charge 'requires proof of a fact which the other does not.'" *Chapman*, 551 F. App'x at 854 (citations omitted).

Then, in the severed trial on Count Four, regarding Fletcher's firearm offense on September 8, 2020, he received another conviction for Felon in Possession of a Firearm under §§ 922(g)(1) and

---

[11] Fletcher was also convicted for Possession with Intent to Distribute a Controlled Substance in Count Two, but does not challenge that portion of the Judgment.

-32-

924(a)(2). (J. at PageID 1252.) Though Counts One and Four involve the same statutory offense, the convictions were not imposed "based on the same firearm possession." *United States v. Ocampo*, 919 F. Supp. 2d 898, 908 (E.D. Mich. 2013). Count Four concerned a separate "incident of firearm possession" than the one for which Fletcher was convicted in Count One, so those convictions likewise pose no Double Jeopardy concerns. *Cf. id.* (citation omitted) (amending judgment to single § 922(g)(1) violation, upon finding Double Jeopardy Clause prohibited multiple § 922(g) convictions—one under subsection (g)(1), one under (g)(3)—*for "the same conduct . . . a single firearm possession . . .* because the allowable unit of prosecution is the incident of possession.)

      3)      Alleged Violation of Second Amendment

Finally, Fletcher argues his § 922(g) convictions "must be vacated" because they violate his right to bear arms. (Mot. at PageID 2611.) However, this constitutional claim was addressed and rejected on appeal. The Sixth Circuit determined Fletcher failed to show imposing § 922(g)'s firearm disability was unconstitutional in his case, given the dangerousness of his prior drug trafficking offenses. *Fletcher*, slip op. at 4. Here, Fletcher does not offer any new argument or legal basis which might warrant re-litigating this issue. The court finds the claim foreclosed and without merit.

Therefore, Fletcher fails to show he is entitled to § 2255 relief for alleged errors in sentencing.

**D.**      **Whether Fletcher Has Shown He Received Ineffective Assistance of Counsel**

Notwithstanding the above, a federal prisoner may assert claims of ineffective assistance of counsel "in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Fletcher claims he received ineffective assistance of counsel because his counsel was deficient at various points in proceedings, which prejudiced his case cumulatively. The Government contends that, 4"[n]one of

-33-

the claims, taken individually or collectively, provide a basis for relief." (Opp'n at PageID 2723.) The Federal Public Defender argues the Government "does not address the distinction between . . . independent grounds for relief and the analysis this Court must perform for [IAC]," emphasizing that Fletcher was prejudiced by the "cumulative effect of counsel's deficient performance," not "each error on its own." (FPD Reply at PageID 2749.)

A criminal defendant has a Sixth Amendment right to "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a defendant-petitioner must establish that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* Both deficiency and prejudice must be established, because unless both *Strickland* components are satisfied, the outcome of proceedings cannot be said to be the result of a breakdown in the adversarial process. *Id.* Accordingly, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697.

First, the "deficiency" prong of *Strickland* requires "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Id.* A successful ineffective assistance of counsel claim must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Counsel must have met the "proper standard . . . of reasonably effective assistance," judged by "reasonableness under prevailing professional norms." *Id.* at 687–88. Therefore, a defendant-petitioner asserting IAC must identify acts by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. This

-34-

is a high bar; courts view counsel's performance in a "highly deferential" manner. *Id.* at 689. As the Sixth Circuit has emphasized: "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Sowell v. Bradshaw*, 372 F.3d 821, 837 (6th Cir. 2004) (citing *Strickland*, 466 U.S. at 689). Generally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690.

Second, the "prejudice" prong of *Strickland* requires, "a defendant . . . [to] demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. . . . [a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Moss v. United States*, 323 F.3d 445, 454–55 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). In addition, "[i]t is not enough for [a petitioner] to argue that a different attorney would done a better job. What matters is whether it would have made a difference." *Monea v. United States*, 914 F.3d 414, 420 (6th Cir. 2019) (citation omitted). Thus, the Sixth Circuit found a petitioner "fail[ed] to demonstrate prejudice" where he "provide[d] no new evidence and no new arguments that would have altered the trial court's [relevant decision during proceedings]." *Id.*

The court will assess each of Fletcher's arguments that he received constitutionally ineffective assistance of counsel, to determine whether they satisfy the *Strickland* standard. Fletcher asserts his ineffective assistance of counsel claims under a cumulative error theory. (FPD Suppl. at PageID 2704; *see also* FPD Reply at PageID 2749–52 (emphasizing cumulative effect of counsel's deficient performance).) Under the cumulative error analysis, the court identifies whether any conduct by counsel was unreasonable under prevailing professional norms, and then assesses those instances of

deficient performance to assess whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Moss*, 323 F.3d at 454–55 (quoting *Strickland*, 466 U.S. at 694). Fletcher asserts five bases for IAC: (1) Failure to Conduct and Obtain Adequate Discovery; (2) Failure to Subpoena/Call Witnesses; (3) Failure to Object at Trial; (4) Failure to Adequately Prepare for Trial; and (5) Failure to Appear at Sentencing.

    1)    Counsel's Alleged Failure to Conduct and Obtain Adequate Discovery

Fletcher asserts his counsel was ineffective "for failing to obtain and distribute to Mr. Fletcher all discovery during trial." (FPD Suppl. at PageID 2705.)[12] Fletcher contends counsel should have done more to ensure the Government did not withhold discoverable information.

Counsel's decision not to further discuss and argue discovery matters, without more, does not prove counsel provided "representation below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Reviewing discovery and identifying whether additional discovery is needed reflects a matter of counsel's strategic decisionmaking. Moreover, it is well-established that "counsel cannot be ineffective for failure to raise an issue that lacks merit." *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In this case, it was not objectively unreasonable for counsel to have assessed the extensive discovery provided by the Government, consulted with Fletcher and opposing counsel, and determined there was no missing or withheld discovery upon which to demand additional discovery, The record contains no evidence of inadequate or withheld discovery, and counsel is not obligated

---

[12]    Federal Rule of Criminal Procedure 16, "requires the United States to provide a defendant copies of data and documents in its possession if, as relevant here, that information 'is material to preparing the defense.'" *United States v. Harney*, 934 F.3d 502, 507–08 (6th Cir. 2019) (citing Fed. R. Crim. P. 16(a)(1)(E)).

to continue to seek more discovery nor satisfy the defendant's demand to see additional discovery, when there is simply no further discovery needed. In fact, counsel's reasonableness during discovery is especially clear in light of the Sixth Circuit's determination that this court did not err by not holding hearings for said discovery concerns, because there was no merit to Fletcher's claims of incomplete discovery before or during trial. *See Fletcher*, slip op. at 2–4 ("nothing in the record established that the prosecution had withheld discovery from the defense or that Fletcher had not been provided discovery"). Furthermore, the Sixth Circuit noted that "defense counsel explained that Fletcher refused to review discovery with him when he attempted to do so, and counsel did not claim that the prosecution failed to provide any required discovery," *id.*, and Fletcher does not refute this. Finally, the record reflects that Fletcher's counsel was in continuous conversation with Fletcher, routinely reviewed and discussed discovery, and raised Fletcher's concerns about discovery. *See, e.g.*, *supra* Section (I)(B)(2).

Thus, counsel reasonably satisfied his obligations under prevailing professional norms, and Fletcher cannot show any missing discovery prejudiced his defense to the level of constitutional error or manifest injustice. Thus, this IAC claim fails.

2)      Counsel's Alleged Failure to Call Witnesses at Trial

Furthermore, Fletcher also claims defense counsel was "ineffective by not sending out subpoena[s] to the witnesses [that Fletcher] requested for trial," asserting that he "asked to subpoena the state trooper th[at] followed the chase in the airplane," and "also asked my attorney to [subpoena] Savannah Brice, Imere Green, Gavin Williams[,] which my attorney never [did]." (Mot. at PageID 2609.) Below, the court addresses each of the witnesses Fletcher asserts should have testified at trial, to determine whether counsel's alleged failure to call these witnesses was unreasonable.

-37-

### a. Aircraft Pilot

Fletcher first claims counsel was deficient in not procuring the "trooper th[at] followed the chase in the airplane" as a witness. (*Id.*) Fletcher does not specify what the pilot's testimony would have entailed, let alone how it would have bolstered his case or made a difference at trial. He asserts that the pilot was one of "the witnesses [he] requested for trial," (*id.*), but that is far from enough to make out an IAC claim. This alone renders the claim insufficient, as § 2255 requires more than mere speculation or general statements.

In any event, the court finds Fletcher cannot establish IAC on this basis, because he fails to show it was objectively unreasonable not to call the pilot as a witness. Deciding which witnesses to call is a prime example of trial strategy, requiring counsel to weigh pros and cons of having the witness testify, such as what information they may or may not possess, their credibility, and how cross-examination of that witness might impact the defense. And in making that decision, "defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (citation omitted).

Here, Fletcher does not claim the pilot's testimony would have exculpated him—as he does not even specify *what* the testimony would have been. Thus, he necessarily cannot overcome the strong presumption that counsel's decision was reasonable trial strategy. In fact, on direct examination, Fletcher seemingly agreed that the relevant conversation about which the pilot may have testified was already in the record, through another officer's testimony. (Tr. at PageID 2156–57 (". . . . Q. Okay. So we've heard that conversation through Trooper Anderson. Is there anything else relevant on your way coming out? A. No.").) It is not unreasonable for counsel not to call an additional witness to testify to information identical to that provided by another witness on the

-38-

record; especially in light of Defendant's agreement it had already been presented to the jury. And, otherwise, Fletcher does not identify any information the pilot uniquely possessed or would have testified about, and which would have impacted the outcome. Counsel likely reasonably determined testimony from the pilot would be needlessly duplicative, and focused trial strategy elsewhere.

In sum, Fletcher has not overcome the presumption that counsel's decision was anything other than "sound trial strategy." *Sowell*, 372 F.3d at 837. Therefore, this argument fails.

### b. Gavin Williams

Fletcher also claims he received IAC because counsel did not have Gavin Williams testify as a witness, despite Fletcher's "request[]" that he be a witness at trial (Mot. at PageID 2609.) However, Fletcher fails to show his counsel was ineffective for not calling Gavin Williams as a witness, as he does not explain how the decision was unreasonable, or altered his trial outcome.

Fletcher fails to identify what testimony Gavin Williams would have provided, and its impact on his case. He does not claim the witness's testimony would have exculpated him, or otherwise changed the guilty verdict in his case. Accordingly, there is no basis to find that counsel's decision not to call Gavin Williams was anything other than a matter of trial strategy. This argument fails.

### c. Savannah Brice

Similarly, Fletcher claims counsel was unreasonable for not calling Savannah Brice ("Brice") as a witness. (Mot. at PageID 2609.) Fletcher again does not explain what her testimony would have been, nor how it would have exculpated him or altered his trial, and so fails to establish IAC. In any event, colloquy between the court and both parties indicates that Savannah Brice's non-appearance as a witness was not the result of counsel's deficiencies. To the contrary, the record reflects counsel thoroughly and repeatedly discussed with Fletcher about whether Brice would testify.

-39-

Initially, Fletcher's counsel "applied for a writ to secure the appearance and testimony of Ms. Brice," and the court granted that writ. (ECF No. 210, Tr. at PageID 1776–77, 1781–82.) However, "her presence couldn't be secured," because she "ha[d] not been transferred to the custody of ODRC . . . and Summit [County Jail] [would] not release her until that has happened for the purpose of testimony." (*Id.* at PageID 1776–77.) Before trial began, counsel conferred with Fletcher about the logistical issues to procuring Brice as a witness, due to her being "in state custody." (*Id.* at PageID 1776–78.) Counsel explained that Fletcher could file for a continuance until Brice was available "if he thought she were a critical witness," or else "could move forward and have a different strategy" in the case. (*Id.* at PageID 1777.) At that time, Fletcher decided to "move forward with trial." (*Id.* at PageID 1777–78, 1783.)

However, on the second day of trial, and with Fletcher present, counsel raised that Fletcher was re-considering whether he did in fact think Brice was a necessary witness. (*Id.* at PageID 1783–88.) Counsel informed the court that he and Fletcher had discussed the matter extensively, and candidly stated:

> . . . [Fletcher] does get to identify how he wants the case tried . . . . I never want to be in the position of anyone saying that I prevented them from having a witness coming in here and testify. That's a Bar complaint waiting to happen. I'm just being frank.
>
> So I had this conversation with Mr. Fletcher and I've given him my legal advice as to whether or not she's a necessary witness, but I also explained these circumstances of why she wouldn't be here; do you want to move forward with trial or not.
>
> The decision was that he wanted to move forward with trial.

(*Id.* at PageID 1783.) However, counsel explained, Fletcher had now expressed uncertainty.

In the course of this discussion, the court stated: "I hear two things . . . that the defendant does

-40-

and doesn't want the witness. . . . [T]hat he understands she's not central to the strategy, he's ready to move on, and then two minutes later he wants her here." (*Id.* at PageID 1784.)

Following a lengthy discussion with the court and parties, Fletcher ultimately stated that his "final view on the matter" of having Brice as a witness was: "If we ain't got to stop trial, I want her. I want her to come by video or whoever, but if we got to stop trial, then I'll do it myself." (*Id.* at PageID 1786–87.) Immediately thereafter, counsel repeated Fletcher's position: "so long as trial isn't stopped and we can get her here, we'll try to see if we can get her here and get [Summit County Jail] to comply with the writ." (*Id.* at PageID 1787.) In response, the court made clear its doubts that the writ could be executed quickly enough for Brice to testify "in the next day or so," and suggested there may be "a better shot at getting her by video." (*Id.* at PageID 1787.) Before concluding for the day, the court took extra care to confirm Fletcher understood he was responsible for making the decisions about procuring the witness:

> THE COURT: . . . I just want him to understand that sometimes it takes awhile to execute writs, so if you assume as . . . if they had gotten the writ today . . . that they were complying with the writ in a day or two . . . , it doesn't happen that way.
>
> So it may or may not happen. But if [Fletcher's] saying, "Let's go ahead with the trial," I need to understand that.
> . . .
> Does he prefer to have the witness . . . because we have to make sure . . . the record is clear that he's made a decision that it's not essential to the trial of his case.
>
> MR. MACK: Do you agree?
>
> THE DEFENDANT: Yeah, I agree. We ain't got to stop trial. I want her. If you got to stop trial, then I'm ready to just keep going.
>
> THE COURT: All right. Wait a minute.
>
> THE DEFENDANT: I'm ready to go without her if we got to

-41-

stop trial. I'm ready to go without her. If we don't got to stop trial and keep going with her, I want her here.

THE COURT: All right. This is your decision, you understand that?

THE DEFENDANT: Yeah.

(*Id.* at PageID 1787–89.)

The next day, at the close of trial proceedings, the court received Fletcher's confirmation that he desired to have Brice testify, and "consent[ed] to and agree[d] that she [would] appear by video." (ECF No. 211, Tr. at PageID 2015.) Thus, Brice was set to testify by video the next day of trial. (*Id.*)

However, on that final day of trial, the Government stated that, "in preparation for [Brice's] testimony today," it identified videos that it "could use . . . to impeach Ms. Brice if she testifies with what she said to us because she said she didn't see the rifle and the rifle wasn't in the room until the following day, which this video seems to contradict." (*Id.* at PageID 2029.) Being made aware of this, defense counsel "confer[red] with" and "advised" Fletcher about potential consequences of calling Brice as a witness, including the testimony that would trigger the Government to impeach her with the videos. (*Id.* at PageID 2029–31.) Thereafter, counsel reported "we're not going to be calling Ms. Brice as a witness." (*Id.* at PageID 2030–31.) Before excusing the witness, the court had Fletcher confirm he agreed with counsel's statement that he "decided not to call Ms. Brice," and that Fletcher indeed "finally decided that [he] d[id] not want to call her." (*Id.* at PageID 2031–32.)

Thus, the record clearly shows counsel was not deficient with regard to Savannah Brice not appearing as a witness. Defendant was involved in every stage of that decision, as he repeatedly confirmed in his representations to counsel and the court. This claim fails.

       *d.*    *Imere Green*

-42-

Notably, the Federal Public Defender's Supplement and Reply does not discuss any of the above witnesses; instead, it argues only that counsel was objectively unreasonable for failing to call Imere Green (or "Green"), Fletcher's son, as a witness. Unlike with the above-discussed witnesses, Fletcher does specify the substance of the testimony he alleges Green should have been called to give. The Motion and Federal Public Defender's Supplement both assert "[Green] was willing to testify" about that which he also avers in his Affidavit, (ECF No. 230 Ex. 1): "that the gun found in the Chevy Malibu on June 24, 2020, was his gun and that Mr. Fletcher was not in possession of it." (FPD Suppl. at PageID 2704.) Fletcher alleges this testimony would have "refute[d] much of what government witnesses testified to" about Fletcher's possession and handling of the firearm. (*Id.* at PageID 2704–05.) However, these allegations fail to establish ineffective assistance of counsel.

As explained previously, whether to call a witness is a quintessential example of a strategic trial decision by counsel. And here, there is no basis upon which Fletcher can overcome the presumption that the decision not to call Imere Green was a matter of counsel's sound trial strategy. To the contrary, the record reflects it was a "strategic choice[] made after thorough investigation of law and facts," which is "virtually unchallengeable" in an IAC claim. *Strickland*, 466 U.S. at 690.

First, counsel did in fact meet with Imere Green while preparing for trial to inquire about his version of events, (*see* ECF No. 230 Ex. 1, Green Affidavit), before ultimately declining to call him as a witness. This does not reflect that counsel failed to meet prevailing professional norms. Instead, it indicates counsel thoroughly contemplated whether calling Green would help or hinder the defense strategy, and determined it would not sufficiently benefit Fletcher's case. In so doing, counsel likely weighed considerations such as the familial relationship between the witness and Defendant, as well as Imere Green's own involvement on the day of the offense and how it may have impacted the jury's

-43-

perception of his trustworthiness or credibility, or the defense strategy overall.

Furthermore, it was not objectively unreasonable for counsel to refrain from having Imere Green testify that Fletcher did not possess the firearm. First, Fletcher himself admitted his possession. Fletcher testified, under oath, that he "had the rifle come out because I was going out into the community, and I didn't want to go out in the community without a firearm. I never denied the firearm, beside when I'm first initial [sic] with the police, but yes, I had the firearm." (ECF No. 212, Tr. at PageID 2102–03.) Fletcher also testified that he was driving the vehicle, and that he had placed the firearm in the back seat. (*Id.* at PageID 2158–60.) In addition, prior statements from Imere Green further indicated that Fletcher possessed the firearm in the vehicle. Video footage obtained from Imere Green's cell phone and entered into evidence showed him fleeing after the vehicle chase, and stating: "My dad had the chop in the fuckin' car." (ECF No. 211, Tr. at PageID 2006–10; Opp'n at PageID 2731.) That video and transcript was presented to the jury, along with Agent McCausland's testimony about the video showing a rifle and that, in his experience, the term "chop" means "another slang term for chopper or an AK-47 or an AK-style rifle." (ECF No. 211, Tr. at PageID 2000–02.) Thus, it was reasonable for counsel, knowing that the position of Fletcher was the same as that of other witnesses-- that Fletcher possessed the gun--it would not have been helpful or credible to have Green give testimony that stood in direct contradiction. Moreover, even if Green were to have testified in general terms, such as that he owned or typically had that particular firearm, that is still of no consequence. That caveat was known to the jury, and made no difference to its guilty verdict. Fletcher plainly testified on cross-examination that, "it's not my AK, but I was in possession of it that day, yeah," meaning during the vehicle chase on June 24, 2020, as well as possessing it "on multiple other days." (ECF No. 212, Tr. at PageID 2158.)

-44-

Although it is now argued that Fletcher may not have taken the stand in his own defense if Imere Green had been put on as a witness, (FPD Suppl. at PageID 2705), that is not persuasive. As well as being merely speculative, that argument further fails because defense counsel certainly need not, and indeed under his professional obligations cannot, put forth testimony known to be false or misleading. And Fletcher does not claim his decision to take the stand was anyone's but his own.

Accordingly, counsel was not deficient for declining to call Green as a witness at trial.

Finally, Fletcher cannot show he suffered prejudice because counsel did not call additional witnesses at trial. Regardless of proposed additional witness testimony, the weight of all of the evidence would sustain the jury's finding that Fletcher possessed the firearm. Evidence at trial, including Fletcher's own testimony, testimony from Leandre Hollinshed, (*see, e.g.*, ECF No. 210, Tr. at PageID 1708–25), testimony from Agent McClausland, (ECF No. 211, Tr. at PageID 2000–07), and exhibits and video footage taken during the offense or referencing it, (*see, e.g.*, *id.* at PageID 2000–10), and more, together uphold the verdict.

Therefore, counsel was not ineffective for failing to call witnesses at trial, and this claim fails.

3)        Counsel's Alleged Failure to Object at Trial

Fletcher also claims he received ineffective assistance of counsel because his counsel failed to object to testimony by officers at trial.

First, Fletcher argues that counsel should have objected to Trooper Anderson's testimony, referring to the same testimony he also challenged as perjured testimony. However, it is well-established that counsel is not required to pursue futile challenges, and an alleged failure to make an objection that would have been overruled cannot establish ineffective assistance of counsel. *Biggs v. United States*, 3 F. App'x 445, 448–49 (6th Cir. 2001); *Porter v. Eppinger*, No. 19-3443, 2021 WL

3828113, at *7 (6th Cir. Aug 27, 2021) ("It is elementary that counsel cannot be ineffective for failing to raise a meritless objection."). As the court has already explained, and the Sixth Circuit determined on appeal, there is insufficient basis to find any false testimony adduced at trial. Necessarily, then, Fletcher cannot prevail on his argument that counsel should have objected to Trooper Anderson's testimony as false. For reasons stated previously in this Order, such an objection would have been futile. Thus, counsel was not deficient in failing to object, and this claim fails.

Otherwise, Fletcher argues counsel should have objected to "law enforcement witnesses," who testified that "Fletcher threatened to kill them when they first apprehended him." (FPD Suppl. at PageID 2707.) Before trial, defense counsel filed a Motion to Suppress these same statements, (ECF No. 16), which was denied by the court. (ECF No. 24, Order.) However, Fletcher now contends that "counsel should have filed a motion in limine before trial and/or objected to them when the government introduce[d] them during trial." (*Id.*) The Government asserts this argument was "tried and rejected on direct appeal." (Opp'n at PageID 2744.) To this, the Federal Public Defender counters: "Had counsel filed a motion in limine or timely objected during trial, the Sixth Circuit would have reviewed the Court's finding . . . under an abuse of discretion standard, rather than for plain error. . . . prejudic[ing] . . . Fletcher's appeal." (FPD Reply at PageID 2752.)

Addressing this on direct appeal, the Sixth Circuit found: "Fletcher ha[d] not established that admission of the testimony concerning his threats [to law enforcement] affected his substantial rights because, given the considerable evidence that he committed the three crimes at issue, it is unlikely that the alleged error affected his trial's outcome." *Fletcher*, slip op. at 6. In coming to that conclusion, the Sixth Circuit applied the plain-error standard, "[b]ecause Fletcher did not object to the testimony concerning the threats" during trial. *Id.* Here, Fletcher challenges that very lack of

-46-

objection during trial, arguing his counsel *should* have objected to the testimony and sought its exclusion. He argues, "[t]hese statements were highly inflammatory, and their prejudicial effect far outweighed any probative value," and thus, "counsel should have argued . . . they did nothing to prove Mr. Fletcher was guilty . . . and only served to prejudice him before the jury's eyes." (FPD Suppl. at PageID 2707–08); *see also* Fed. R. Evid. 403.[13] He asserts this was one of multiple deficiencies by counsel that cumulatively prejudiced his case. Accordingly, the relevant inquiry for the court here is whether counsel acted in an objectively unreasonable manner, under prevailing professional norms, by "fail[ing] to file any motion to exclude these statements or to object to them during trial." (FPD Suppl. at PageID 2708); *Strickland*, 466 U.S. at 687–88. It bears repeating that counsel "cannot be ineffective for failing to raise a meritless objection," or for declining to assert "a futile challenge." *Porter*, 2021 WL 3828113, at \*7; *Biggs*, 3 F. App'x at 448–49. Moreover, the court must view counsel's performance in a "highly deferential" manner. *Strickland*, 466 U.S. at 689.

The court finds that counsel was not deficient for not objecting to the testimony about Fletcher's threats to law enforcement. Indeed, Fletcher's defense counsel had previously argued these statements were too prejudicial and should be excluded before trial, filing a Motion to Suppress the statements and representing Fletcher at the Suppression Hearing on the matter. (ECF No. 24, Order at PageID 111.) The Motion to Suppress was denied, because the officers' sworn testimony was credible and Fletcher's threats were voluntarily made statements. (*Id.* at PageID 116.) In light of this prior assessment by the court of these exact threatening statements, it would not be unreasonable for

---

[13] Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

counsel to have determined that it would be a futile exercise to again "object to their admissibility." (*See* FPD Suppl. at PageID 2709.) Indeed, as explained below, any such objection would have failed.

Excluding evidence under Rule 403 is a matter of trial court discretion, requiring the court to find the evidence is so prejudicial as to "substantially outweigh" its probative value. Fed. R. Evid. 403. In this case, even now, Fletcher fails to show testimony about his threats to officers had such prejudicial effect as to substantially outweigh any probative value. Rather, the transcript reveals that the testimony in question was very minimal and played little role in the case. The statements were few and far between, and recounted merely in the context of two officers describing the arrest.[14] Moreover, whether evidence is unduly prejudicial includes considering, "[t]he availability of other means of proof." Fed. R. Evid. 403 Advisory Committee Notes. In this case, the record contained other similar proof of Fletcher threatening officers—most notably, his own statements. (ECF No. 212, Tr. at PageID 2162.) On cross-examination, the Government asked Fletcher about a livestream that he recorded during the chase leading to his arrest, which he said he recorded for "entertaining" purposes. (*Id.*) Then, Fletcher agreed with the Government's statement that "[p]art of that entertainment was [him] threatening to shoot the police that came to get [him]." (*Id.*) ("Yes. Never had a firearm with me at the time when I was saying it, neither.").) Thus, it is not true, as Fletcher claims, that absent officers' testimony, the jury would not have had any basis upon which to be prejudiced against him for the "highly offensive" behavior of making "[t]hreats to police officers." (FPD Suppl. at PageID 2708.) Finally, even if the statements carried *some* prejudice, that is

---

[14]     Trooper Anderson testified that Fletcher "threatened me and told me that he's a super killer and he's going to kill me just for dealing with him," (ECF No. 211, Tr. at PageID 1836), and Trooper Dowler testified that Fletcher "said he was going to get out and shoot us . . . they took him to patrol car and he was continuing to make threats." (ECF No. 210, Tr. at PageID 1693.)

insufficient under Rule 403, and Fletcher fails to show they changed the outcome of his trial. The jury is tasked with weighing all evidence, and there was "considerable evidence that he committed the crimes at issue"—as the Sixth Circuit explained when it found it "unlikely" officers' testimony about the threats "affected [Fletcher's] trial's outcome." *Fletcher*, slip op. at 6.

Thus, counsel was not deficient for failing to further object to this testimony, as any such objection would have failed, and Fletcher's case was not prejudiced. Accordingly, this claim fails.

4)      Counsel's Alleged Failure to Adequately Prepare for Trial

Fletcher also argues briefly in his Second Supplement that counsel inadequately prepared his defense, by: (1) "not being ready for trial because he stated it was a lot of discovery and he didn't have enough time to review all the discovery," and (2) "not going over my case with me[;] I had other ideals [sic] and evidence to show at trial that my counsel didn't help with." (Mot. at PageID 2620.)

The Government responds that "these claims are vague, speculative, and unsupported," and "conclusory allegations like these cannot sustain a § 2255 motion." (Opp'n at PageID 2739.) The court agrees. First, there is no support in the record for the assertion that counsel did not sufficiently review discovery, nor does Fletcher provide any factual allegations to support that reviewing more discovery would have impacted his case. Similarly, Fletcher does not discuss specific examples of counsel failing to go over his case with him. Instead, the record reflects Fletcher was highly involved at all steps in his case, including attending all hearings alongside counsel, and voicing his concerns on the record at numerous points in the proceedings. Moreover, as was partially outlined herein, *see supra* Section (I)(B), the record indicates Fletcher's counsel advocated zealously on his behalf throughout discovery and trial, and that Fletcher was involved in making decisions about his defense. Furthermore, Fletcher does not explain how any of his counsel's decisions while reviewing discovery

-49-

or preparing his defense was objectively unreasonable. Although he may disagree with some of his counsel's strategic decisions or desired a different strategy at trial, or is unsatisfied with the outcome of trial, that is plainly not enough.

Therefore, Fletcher fails to satisfy his heavy burden of overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and this claim fails. *Sowell*, 372 F.3d at 837 (citing *Strickland*, 466 U.S. at 689).

5)      Counsel's Alleged Failure to Appear at Sentencing

Finally, Fletcher argues counsel was "ineffective by not showing up at my sentence after he was the lawyer at trial," and "removing himself off my case as soon as he los[t] the trial." (Mot. at PageID 2620.) However, there is no support for this claim in the record. Attorney Mack represented Fletcher through trial on Counts One, Two, and Three, until the jury reached its verdict. Afterwards, he requested to withdraw because "the attorney-client relationship has broken down," and "Fletcher does not believe the undersigned is working in his best interest." (Mack Mot. to Withdraw at PageID 495–96.) Moreover, both Fletcher and Attorney Mack attended the conference where the request to withdraw was granted, and Fletcher did not voice any disagreement about ending the attorney-client relationship, nor the stated reasons for doing so. (06/01/2022 Dkt. Entry, Minutes of Proceedings.)

Fletcher also cannot show the withdrawal of representation prejudiced his case. The actions of counsel *after* a jury verdict is reached cannot be said to have prejudiced his trial, and there is no legal basis for finding ineffective assistance of counsel based solely on counsel *removing* oneself from a case entirely due to a break down in the attorney-client relationship. Although Attorney Mack noted he would be willing to "represent[] Mr. Fletcher as to Counts 1 through 3 at sentencing," at the June 2022 conference where he withdrew representation, (*id.*), Fletcher was not left without counsel

at his eventual Sentencing in February 2024. He was represented by Attorneys Paul Flannery, Kelsey Baughman, and Kevin Spellacy, (02/22/2024 Dkt Entry, Sentencing Minutes), and does not claim his representation at Sentencing was deficient. Moreover, as discussed, the record reflects that Fletcher took part in the decision to have his counsel withdraw representation. This claim fails.

**D.      An Evidentiary Hearing is Not Warranted Because The Record Conclusively Shows Fletcher Is Entitled to No Relief Under 28 U.S.C. § 2255.**

Ultimately, the court finds Fletcher has failed to demonstrate that he is entitled to § 2255 relief. In so concluding, the court further finds an evidentiary hearing on this matter is not warranted, because "the motion, files, and records of the case 'conclusively show'" Fletcher is not entitled to § 2255 relief. *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the court denies Fletcher's Motion to Vacate Pursuant to 28 U.S.C. § 2255. (ECF No. 221; 21CR707 Doc # 55.)  The court further certifies that there is no basis upon which to issue a Certificate of Appealability under 28 U.S.C. § 2253(c)(1)(b).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

August 10, 2026